CARTER LAW FIRM, APC
COREY CARTER (SBN 269611)
Email: corey@themainstreetattorney.com
27240 Turnberry Lane, Suite 200
Valencia, CA 91355
Tel: (323) 825 – 5529 Fax: (323) 450 - 2222

CBS LAW
Christopher J. Bou Saeed (SBN 295774)
Email: chris@thecbslaw.com
633 W 5th Street, 26th Floor
Los Angeles, CA 90071
Tel: (213) 605-5838
Attorneys for Plaintiffs

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTHER S. RHA individually, SEONG K. RHA AND EUL Y. RHA, individually and as successors-in-interest of CHONG TOK RHA, deceased,<br><br>    Plaintiffs,<br><br>    vs.<br><br>ORANGE COUNTY, public entity, ORANGE COUNTY SHERIFF'S DEPARTMENT, public entity, DEPUTY JUSTIN R. RAMIREZ, DEPUTY LAURIE B. SCHWARTZ, and DOES 1-8<br><br>    Defendants. | No. 8:20-cv-01885<br><br>COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND<br>1. Violation of Civil Rights – Excessive Force Under Color of Law and Denial of Medical Care, 42 U.S.C. § 1983<br>2. Deprivation of Life Without Due Process – 42 U.S.C. § 1983<br>3. Municipal Liability –Unlawful Custom, Policy, Practice, Training and Supervision – 42 U.S.C. § 1983<br>4. Wrongful Death – Civ. Proc. Code § 377.60<br>5. Battery<br>6. Negligence<br>7. Violation of Bane Act (Cal. Civ. Code § 52.1)<br>8. Unreasonable Search and Seizure – Search, Detention, False Arrest, and Excessive Force (42 U.S.C. § 1983)<br>9. False Imprisonment<br>10. Negligent Infliction of Emotional Distress |

# COMPLAINT FOR DAMAGES

COME NOW, Plaintiffs ESTHER S. RHA individually, SEONG K. RHA AND EUL Y. RHA, individually and as successors-in-interest of CHONG TOK RHA, deceased, for their Complaint against Orange County, Orange County Sheriff's Department, Deputy Justin R. Ramirez, Deputy Laurie B. Schwartz, and DOES 1-8, inclusive, and allege as follows:

# JURISDICTION AND VENUE

1.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendment of the United States Constitution.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

# INTRODUCTION

3.      This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution in connection with the death of Chong Tok Rha ("Richard").

# PARTIES

4.      At all relevant times, Plaintiffs Esther S. Rha ("Esther"), Seong K. Rha ("Mr. Rha"), Eul Y. Rha ("Ms. Rha") (collectively "Plaintiffs"), were individuals residing in Orange County.

5.      Mr. Rha and Ms. Rha are successors in interest to Richard.

6.      Plaintiffs currently reside in Orange County, California.

7.     At all relevant times, Defendant "ORANGE COUNTY" ("COUNTY") is and was a duly organized public entity, form unknown, existing under the laws of the State of California. COUNTY is a chartered subdivision of the State of California with the capacity to be sued. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Orange County Sheriff's Department ("Sheriff's Department") and its agents and employees.

8.     At all relevant times, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the Sheriff's Department and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, COUNTY was the employer of Defendants DOES 1-8.

9.     Defendant Deputy Justin R. Ramirez ("Ramirez") is a Deputy for the Orange County Sheriff's Department and was acting under color of state law in the course and scope of his employment when he violated the rights of Richard and Plaintiffs and was acting with the complete authority and ratification of their principal, Defendant COUNTY.

10.    Defendant Deputy Laurie B. Schwartz ("Schwartz") is a Deputy for the Orange County Sheriff's Department and was acting under color of state law in the course and scope of her employment when she violated the rights of Richard and Plaintiffs and was acting with the complete authority and ratification of their principal, Defendant COUNTY.

11.    Defendants DOES 1-4 were at all relevant times herein employees and deputies for the COUNTY. At the time of the incident, DOES 1-4 were acting under color of state law within the course and scope of their duties as deputies for the COUNTY. DOES 1-4 were acting with the complete authority and ratification of their principal, Defendant COUNTY. Ramirez, Schwartz, and DOES 1-4 are

1    collectively referred to herein as "DEPUTY DEFENDANTS".

2      12. Defendants DOES 5-8 are supervisory deputies and/or policy makers

3    for the COUNTY who were acting under color of state law within the course and

4    scope of their duties. DOES 5-8 were acting with the complete authority and

5    ratification of their principal, Defendant COUNTY.

6      13. Defendants Ramirez, Schwartz, and DOES 1-8 are sued in their

7    individual capacities.

8      14. The true names and capacities of DOES 1-8 are unknown to Plaintiffs,

9    who otherwise sues these Defendants by such fictitious names. Plaintiffs will seek

10   leave to amend this Complaint to show the true names and capacities of these

11   Defendants when they have been ascertained. Each of the fictitiously named

12   Defendants is responsible in some manner for the conduct or liabilities alleged

13   herein.

14     15. This is an action for damages and such other and further relief as may

15   be consistent with state and federal law, to redress violations of the Plaintiffs' rights

16   protected by the United States Constitution, by persons acting under color of state

17   law.

18     16. At all times mentioned herein, each and every separate Defendant was

19   the agent of each and every other Defendant and had the legal duty to oversee and

20   supervise the hiring, conduct, and employment of each and every Defendant.

21     17. All of the acts complained of herein by Plaintiffs against Defendants

22   were done and performed by said Defendants by and through their authorized

23   agents, servants, and/or employees, all of whom at all relevant times herein were

24   acting within the course, purpose, and scope of said agency, service, and/or

25   employment capacity. Moreover, Defendants and their agents ratified all of the acts

26   complained of herein.

27     18. On or about October 16, 2019, Plaintiff's timely served a

28

comprehensive claim for damages with the COUNTY pursuant to applicable sections of the California Government Code including §910.4. On March 31, 2020, the County rejected these claims.

## **FACTS**

### The Physical Altercation

19.     Plaintiffs repeats and re-alleges each and every allegation in paragraphs 1 through 18 of this Complaint with the same force and effect as if fully set forth herein.

20.     On July 15, 2019, Ms. Rha got home in the early afternoon after work.

21.     Richard was naked in the house and Ms. Rha told him to put his clothes on, but he didn't do it.

22.     Mr. Rha arrived home around 7:30 PM and at that time Richard had his boxers on.

23.     Mr. Rha called Esther a little after 8PM.

24.     At or around 8:30 PM Esther called the Orange County Sheriff's Department and told them Richard was being aggressive, on something, and naked in the house.

25.     Esther was driving to her parents' home when she made the call.

26.     When Deputies Ramirez and Schwartz arrived around 9:20 PM, they asked Ms. Rha and Mr. Rha to step outside the house.

27.     Deputy Ramirez had responded to Mr. Rha and Ms. Rha's residence before.

28.     Mr. Rha and Ms. Rha asked the deputies to wait until Esther arrived because Mr. and Ms. Rha were not proficient in English and wished for Esther to speak with the Deputies.

29.     After just a few minutes, Esther arrived at the house.

30.     Esther told Deputy Ramirez and Deputy Schwartz that she thought Richard might be on something and that he was schizophrenic.

31.     She gave Deputy Ramirez a copy of a restraining order Mr. Rha and Ms. Rha had obtained in court on July 11, 2019 but had not yet been served on Richard.

32.     Deputy Ramirez asked the family to wait inside of Mr. and Ms. Rha's car which was parked in the driveway.

33.     The deputies asked if the family had any weapons in the house.

34.     Esther said no, other than kitchen knives in the kitchen.

35.     Deputy Ramirez and Deputy Schwartz then went into the house.

36.     On information and belief, prior to initiating physical contact with Richard, Deputy Ramirez never saw Richard holding a weapon.

37.     On information and belief, prior to initiating physical contact with Richard, Deputy Schwartz never saw Richard holding a weapon.

38.     Despite their belief as well as their awareness that their deputies had daily encounters with the mentally ill population in its city, the defendants failed to obtain, provide, and utilize resources available to it in order to properly train its deputies, including the individual defendant deputies, on how to deal with persons who are believed to have mental illness during encounters with deputies.

39.     On information and belief, Deputy Ramirez and Deputy Schwartz, under color of authority, initiated physical contact with Richard and used excessive force upon him with their fists, elbows, and Taser.

40.     On information and belief, Defendants gained and maintained control of Richard by handcuffing him and securing him on the ground.

41.     On information and belief, even though the Deputies outnumbered Richard, had him handcuffed, and had less harmful means of restraining him, Deputy Ramirez elected to use the carotid choke hold on Richard.

42.     On information and belief, Deputy Ramirez elected to use the carotid choke hold despite knowing it restricts air and/or blood from passing through Richard's body and thus carries with it the risk of severe injury or death.

43.     On information and belief, Deputy Ramirez's use of the carotid choke hold rendered Richard unconscious.

44.     On information and belief, Ramirez continued to apply the carotid choke hold despite the fact that Richard was unconscious and despite knowing this would continue to restrict Richard's air and/or blood flow.

45.     On information and belief, while Deputy Ramirez used the carotid choke hold on Richard, Deputy Schwartz stood by and allowed it to continue despite knowing the carotid choke hold was restricting Richard's air and/or blood flow and thus carries with it the risk of severe injury or death.

46.     On information and belief, Deputy Schwartz failed to stop Deputy Ramirez as he continued to apply the carotid choke hold to Richard's unconscious body, despite knowing this continued to restrict Richard's air and/or blood flow.

47.     On information and belief, both Deputy Ramirez and Deputy Schwartz knew or should have known that Richard's failure to regain consciousness constituted a medical emergency.

48.     On information and belief, despite the existence of a medical emergency, neither Deputy Ramirez nor Deputy Schwartz properly checked Richard's vitals.

49.     On information and belief, despite the existence of a medical emergency, neither Deputy Ramirez nor Deputy Schwartz rendered medical aid to Richard.

50.     Richard did not die immediately.

51.     Richard was transported to St. Jude Medical Center where he never regained consciousness.

52.   Richard finally succumbed to his injuries on August 7, 2019.

53.   As a direct result of the physical altercation with defendants Ramirez and Schwartz, Richard died.

54.   Defendants' actions caused Richard to lose his life, Mr. Rha and Ms. Rha to lose their son, and Esther to lose her brother.

55.   The seizure and use of deadly force was excessive and objectively unreasonable under the circumstances.

56.   The use of deadly force by Deputy Ramirez and Deputy Schwartz demonstrated a deliberate indifference to the health and safety of Richard that shocks the conscience.

57.   The failure to render medical aid by Deputy Ramirez and Deputy Schwartz demonstrated a deliberate indifference to the health and safety of Richard that shocks the conscience.

58.   From on or about March 2019 to July 2019, Esther had called 911 or the Orange County Sherriff's Department multiple times to address Richard's mental health.

59.   During this period, Orange County Sherriff's Department responded multiple times.

60.   On each of these occasions, Esther told the Orange County Sherriff's Department that Richard had schizophrenia.

61.   On each of these occasions, there was never any physical altercation between Richard and the deputies.

Deputy Treatment of the Rha Family

62.   As Deputy Ramirez and Deputy Schwartz entered the Rha family residence, Esther and her parents, Mr. Rha and Ms. Rha, waited inside of their car parked in the driveway.

63.   Roughly 30 minutes later, a newly arrived deputy stopped by the car and told Plaintiffs that Richard fought back, deputies were injured, and it was now a homicide investigation.

64.   Mr. Rha, Ms. Rha, and Esther then saw Richard taken out of the house on a gurney.

65.   The same deputy came around again and said Richard had gone into cardiac arrest and was on the way to the hospital.

66.   A short time later, deputies removed Plaintiffs from the family car and separated them.

67.   The deputy took the belongings of Mr. Rha, Ms. Rha, and Esther, including their keys and cell phone.

68.   Deputies told Mr. Rha, Ms. Rha, and Esther that they must be interviewed separately.

69.   Ms. Rha was ordered to remain in the family car, while deputies placed Mr. Rha and Esther into the back of two different police cars.

70.   After deputies placed Mr. Rha and Esther into the back of two police cars, they locked the doors of each car.

## Deputy Treatment of Esther

71.   Deputies cracked the windows in the locked police car housing Esther.

72.   Hot and uncomfortable after an hour inside the locked police car, Esther banged on a window to get a deputy's attention and ask whether the vehicle's air conditioning could be turned on.

73.   Esther spent another several hours inside the locked Sherriff's car.

74.   Deputies then escorted Esther to a neighbor's house to use a bathroom upon her request.

75.   At or around 3:00am, a deputy escorted Esther from the locked police

car to a location across the street.

76.     At this location, a woman in a suit interviewed Esther in the presence of other deputies.

77.     The interview lasted about 10 minutes.

78.     After the interview, deputies returned to Esther the belongings they had previously confiscated prior to detaining her inside of the locked police car.

<u>Deputy Treatment of Mr. Rha</u>

79.     While Esther was placed in a locked police car, Mr. Rha was placed in a separate locked police car.

80.     Deputy Defendants confiscated Mr. Rha's personal belongings, including his cell phone.

81.     Deputies Defendants left the windows rolled up in the locked police car housing Mr. Rha.

82.     The locked police police car housing Mr. Rha was also turned off.

83.     After approximately one hour, Deputy Defendants asked Mr. Rha if he wanted water which they subsequently delivered to him.

84.     Approximately three hours later, Mr. Rha banged on a window to get the attention of a deputy to ask whether he may use the restroom.

85.     Deputy Defendants escorted Mr. Rha to a neighbor's house to use the bathroom.

86.     Deputy Defendants then escorted Mr. Rha back to the same locked police car with the windows rolled up and put him in the back seat.

87.     About two hours later, a deputy interviewed Mr. Rha with the assistance of a Korean interpreter.

88.     After the interview, Deputy Defendants returned to Mr. Rha his belongings they had previously confiscated and allowed him to rejoin Esther and

1 | Ms. Rha in their family car parked in the driveway.

2 | 89.   Deputy Defendants ordered Plaintiffs to remain in the car.

3 | 90.   Eventually Esther left to visit Richard in the hospital.

4 | 91.   Mr. Rha and Ms. Rha slept in their vehicle parked in the driveway until
5 | Deputy Defendants told them they had permission to go into the home in the early
6 | hours of the morning.

7 | 92.   Richard never regained consciousness.

8 | 93.   Richard was never breathing on his own.

9 | 94.   The Monday or Tuesday before he passed he was officially declared
10 | brain dead.

11 | 95.   Richard passed away on August 8, 2019.

12 |

13 | **FIRST CLAIM FOR RELIEF**

14 | **(Violation of Civil Rights – Excessive Force Under Color of Law**
15 | **and Denial of Medical Care, 42 U.S.C. § 1983)**

16 | **[Plaintiffs SEONG RHA and EUL RHA, in their capacities as successors-in-**
17 | **interest to RICHARD RHA, against Defendants RAMRIEZ and SCHWARTZ]**

18 | 96.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1
19 | through 95 of this Complaint with the same force and effect as if fully set forth
20 | herein.

21 | 97.   All actions alleged herein were undertaken by Defendant RAMIREZ as
22 | a sheriff deputy under color of state law.

23 | 98.   All actions alleged herein were undertaken by Defendant SCHWARTZ
24 | as a sheriff deputy under color of state law.

25 | 99.   Defendants' use of deadly force was both excessive and unreasonable
26 | under the circumstances. Richard had the right under the Fourth and Fourteenth
27 | Amendments of the United States Constitution to be free from excessive force while

28 |

being detained and/or arrested by Defendants RAMIREZ and SCHWARTZ.

100.    Plaintiffs SEONG RHA and EUL RHA, as Richard's successors-in-interest, have the right and standing to assert Richard's claim for this violation of his Fourth and Fourteenth Amendment rights.

101.   On July 15, 2019, Defendants RAMIREZ and SCHWARTZ intentionally restrained Richard by beating him with their fists and elbows, discharging their Tasers into him several times, and imposing violent and prolonged compression on his neck, causing him great bodily injury, suffering, and death.

102.   The lethal force applied to Richard by Defendants RARMIREZ and SCHWARTZ was in excess of the amount of force a reasonable sheriff deputy would have used under similar circumstances.

103.   Defendants knew that failure to provide timely medical treatment to Richard could result in further injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing him great bodily harm and death. In particular, Defendants failed to provide the timely medical treatment Richard required to survive his injuries.

104.   The acts and omissions of Defendants RAMIREZ and SCHWARTZ violated the rights of Richard under the Fourth and Fourteenth Amendments of the United States Constitution to be free from excessive force while being detained or arrested, and deprived Plaintiffs of their rights under the Fourteenth Amendment of the United States Constitution to be free from unwarranted interference to their familial relationship with Richard.

105.   As a direct and legal result of the acts and omissions of Defendants RAMIREZ and SCHWARTZ, as deputies under color of state law, Plaintiffs have suffered extreme and severe mental anguish and pain and have been injured in mind and body, and have further been deprived of the life-long love, companionship, comfort, care, assistance, protection, affection, society, moral support, training and

guidance of Richard. Plaintiffs also claim funeral and burial expenses.

106.   The conduct of Defendants RAMIREZ and SCHWARTZ was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiffs and Richard, and therefore warrants imposition of exemplary and punitive damages.

107.   Plaintiffs also seek attorney fees under this claim.

## SECOND CLAIM FOR RELIEF

### (Deprivation of Life Without Due Process – 42 U.S.C. § 1983)

**[Plaintiffs SEONG RHA and EUL RHA, in their capacities as successors-in-interest to RICHARD RHA, and all Plaintiffs, individually, against Defendants RAMIREZ and SCHWARTZ]**

108.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 107 of this Complaint with the same force and effect as if fully set forth herein.

109.   All actions alleged in this Complaint undertaken by Defendant RAMIREZ were undertaken under color of state law.

110.   All actions alleged in this Complaint undertaken by Defendant SCHWARTZ were undertaken under color of state law.

111.   Richard and Plaintiffs had a right under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiffs' familial relationship with Richard.

112.   As a direct and legal result of the unreasonable search and seizure, excessive force, and failure to intervene by Defendants RAMIREZ and SCHWARTZ, Richard died. Defendants' deprivation of Richard's life without due

process of law caused him extreme pain and suffering, loss of life, and his relationship with his parents, friends, and family. Defendant's actions also deprived Plaintiffs SEONG RHA, EUL RHA, and ESTHER RHA of their constitutional right under the Fourteenth Amendment to be free from unwarranted state interference in their familial relationship with Richard.

113. The above described actions of Defendants RAMIREZ and SCHWARTZ, individually and as sheriff deputies, inclusive, along with other undiscovered conduct, shocked the conscience, in that they acted with deliberate indifference to the constitutional rights of Plaintiffs and Richard. Defendants further acted with a purpose to harm unrelated to and unjustified by any legitimate law enforcement objective, in that Defendants were acting to retaliate against Richard, among other things, out of their belief that Richard resisted them and physically responded to them.

114. As a direct and legal result of the acts and omissions of Defendants RAMIREZ and SCHWARTZ, as deputies under color of state law, Plaintiffs have suffered extreme and severe mental anguish and pain and have been injured in mind and body, and have further been deprived of the life-long love, companionship, comfort, care, assistance, protection, affection, society, and moral support of Richard. Plaintiffs also claim funeral and burial expenses.

115. The conduct of Defendants RAMIREZ and SCHWARTZ was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiffs, and of Richard, and therefore warrants imposition of exemplary and punitive damages. Plaintiffs also seek attorneys' fees under this claim.

//

//

//

### THIRD CLAIM FOR RELIEF
**(Unlawful Custom, Policy, Practice, Training and**

**Supervision – 42 U.S.C. § 1983)**

**[All Plaintiffs against Defendants COUNTY OF ORANGE and ORANGE COUNTY SHERIFF'S DEPARTMENT]**

116.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 115 of this Complaint with the same force and effect as if fully set forth herein, including the allegations that the actions of Defendants RAMIREZ and SCHWARTZ, as COUNTY OF ORANGE and ORANGE COUNTY SHERIFF'S DEPARTMENT deputies acting under color of state law, deprived Richard of his rights under the United States Constitution.

117.   The training policies of Defendants COUNTY OF ORANGE and ORANGE COUNTY SHERIFF'S DEPARTMENT with respect to the carotid control hold were not adequate to prevent violations of law by its employees, and defendants COUNTY OF ORANGE and ORANGE COUNTY SHERIFF'S DEPARTMENT did not train its sheriff deputies with respect to the carotid control hold to handle the usual and recurring situations with which they must deal. This includes but is not limited to:

a.   Permitting COUNTY OF ORANGE and ORANGE COUNTY SHERIFF'S DEPARTMENT deputies to use the carotid choke hold, a hold that can be fatal, while, at the same time, failing to adequately train COUNTY OF ORANGE and ORANGE COUNTY SHERIFF'S DEPARTMENT deputies how and when to properly deploy and apply the carotid choke hold.

b.   Allowing its deputies to use the carotid choke hold while, at the same time, failing to adequately train its deputies to recognize signs of a suspect's cardiac arrest and other medical issues during application of the carotid choke hold.

c.   Failing to adequately supervise and control COUNTY OF ORANGE and ORANGE COUNTY SHERIFF'S DEPARTMENT deputies known, or who reasonably should have been known, to be using unnecessary or excessive force.

118.   The training policies of Defendants COUNTY OF ORANGE and

ORANGE COUNTY SHERIFF'S DEPARTMENT with respect to interviewing witnesses were not adequate to prevent violations of law by its employees, and defendants COUNTY OF ORANGE did not train its sheriff deputies with respect to such recurring situations with which they must deal. This includes but is not limited to:

    a. Detaining and arresting persons without probable cause;

    b. Seizure of their personal items including cell phones used to communicate with others;

    c. Separating bereaved and grieving family members from one another after a traumatic event;

119. Defendants COUNTY OF ORANGE and ORANGE COUNTY SHERIFF'S DEPARTMENT were deliberately indifferent to the substantial risk that its carotid control hold policies, including but not limited to Orange County Sheriff's Department Policy 300.3.3 and 300.3.4, were inadequate to prevent violations of law by its employees, and to the known or obvious consequences of its failure to adequately train its sheriff deputies with respect to the carotid choke hold.

120. The failure of defendants COUNTY OF ORANGE and ORANGE COUNTY SHERIFF'S DEPARTMENT to prevent violations of law by its employees, and to provide adequate training, caused the deprivation of Plaintiffs' rights by defendants RAMIREZ and SCWARTZ; that is, the defendants' failure to adequately train and prevent violations of law by its employees is so closely related to the deprivation of plaintiffs' rights as to be the moving force that caused the ultimate injury.

121. The policies of defendants COUNTY OF ORANGE and ORANGE COUNTY SHERIFF'S DEPARTMENT to inadequately train their sheriff deputies, and to inadequately supervise their sheriff deputies, amounted to a deliberate indifference to the predictable fact that these policies would result in violation of

rights accorded by Fourth and Fourteenth Amendments of the United States Constitution.

122.   By reason of the acts and omissions of defendants, plaintiffs were required to and did retain an attorney to institute and prosecute the within action and to render legal assistance to plaintiff so that they may vindicate the loss and impairment of rights and by reason thereof, plaintiff requests payment by defendants of wrongful death damages and a reasonable sum for attorneys' fees.

## FOURTH CLAIM FOR RELIEF

### (Wrongful Death – Civ. Proc. Code § 377.60)

**[Plaintiffs SEONG RHA and EUL RHA in their individual capacities as heirs of RICHARD RHA against Defendants RAMIREZ and SCHWARTZ, COUNTY OF ORANGE, and ORANGE COUNTY SHERIFF'S DEPARTMENT]**

123.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 122 of this Complaint with the same force and effect as if fully set forth herein.

124.   Defendants beat, deployed a Taser against, and violently and improperly compressed Richard's neck despite the absence of a threat to themselves or others.

125.   Because Richard died intestate, unmarried, and without issue, Plaintiffs SEONG RHA and EUL RHA are the proper persons to sue for his wrongful death under California state law.

126.   As the sole heirs of their son, Richard, Plaintiffs SEONG RHA and EUL RHA assert wrongful death actions against all Defendants pursuant to California Code of Civil Procedure §§ 377.60 *et seq*.

127.   This claim is based upon the fact that Defendants' negligent, reckless,

and wrongful acts and omissions, as alleged herein, were a direct and legal cause of Richard's death and the resulting damages to Plaintiffs.

128.   As a result of their conduct, Defendants are liable for Plaintiffs' injuries, either because they were integral participants in the wrongful conduct, or because they failed to intervene to prevent these violations.

129.   Plaintiffs are informed and believe and thereon allege that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiffs' rights, welfare and safety, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

130.   As a direct and legal result of Defendants' acts and omissions, Plaintiffs suffered damages, including, without limitation, loss of earnings and earning capacity, loss of enjoyment of life, pain and suffering, physical injuries and sickness, emotional distress, medical expenses, funeral and burial expenses, attorneys' fees, costs of suit, other pecuniary losses not yet ascertained and the loss of Richard's love, affection, society, and companionship.

131.   Plaintiffs seek both survival and wrongful death damages and all other damages and remedies available under state law.

## FIFTH CLAIM FOR RELIEF

### Battery

**[Plaintiffs SEONG RHA and EUL RHA in their capacity as successors-in-interest to RICHARD RHA against Defendants RAMIREZ AND SCHWARTZ]**

132.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 131 of this Complaint with the same force and effect as if fully set forth herein.

133.   Defendants RAMIREZ and SCHWARTZ, while working as sheriff deputies for COUNTY OF ORANGE, and acting within the course and scope of their duties, intentionally grabbed without provocation, beat, deployed their Taser against, and violently compressed the neck of Richard causing great bodily injury and death. These actions were an unreasonable use of force against Richard to which he did not consent and constituted battery against Richard.

134.   Defendants' battery caused Richard extreme pain and suffering, and loss of life. Defendants' actions also deprived Plaintiffs of the life-long love, companionship, support, society, care, and sustenance of their son, Richard, and they will continue to be so deprived for the remainder of their lives.

135.   Plaintiffs are informed and believe thereon allege that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless and/or were done in willful and conscious disregard of the rights, welfare, and safety of Plaintiffs, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at trial.

136.   As a result of their conduct, Defendants are liable for Richard's injuries, either because they were integral participants in the battery, or because they failed to intervene to prevent these violations.

137.   Plaintiffs bring this claim as successors-in-interest to Richard, and seek both survival and wrongful death damages under state law.

## SIXTH CLAIM FOR RELIEF

### Negligence

**[Plaintiffs SEONG RHA and EUL RHA in their capacity as successors-in-interest to RICHARD RHA, and Plaintiffs SEONG RHA, EUL RHA, and ESTHER RHA, in their individual capacities, against all Defendants]**

138.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

through 137 of this Complaint with the same force and effect as if fully set forth herein.

139.   Defendants owed a duty of care toward Plaintiffs and Richard, and were required to use reasonable diligence to ensure that Plaintiffs and Richard were not harmed by Defendants' acts or omissions.

140.   Defendants actions and omissions were negligent and reckless, including but not limited to:

a.   The assessment and tactical plan upon Defendants' entry into the Rha family residence;

b.   The failure to gather additional personnel and resources upon observation of Richard's behavior;

c.   The unnecessary and dangerous physical engagement of Richard after observing his behavior;

d.   The failure to properly assess the need to use force or deadly force against Richard;

e.   The unnecessary use of force, including deadly force, against Richard;

f.   The erroneous application of deadly force against Richard;

g.   The failure to provide timely medical assistance to Richard upon the Defendants' creation of a medical emergency;

h.   The separation of Esther, Mr. Rha, and Ms. Rha in the immediate aftermath of Richard's cardiac arrest;

i.   The hours-long detention of Esther, Mr. Rha, and Ms. Rha in separate vehicles in the immediate aftermath of Richard's cardiac arrest;

j.   The confiscation of the personal property of Esther, Mr. Rha, and Ms. Rha;

k.  The hours-long detention of Ms. Rha in her vehicle, and Esther and Mr. Rha in locked police cars with the windows either rolled up or slightly askew with no air conditioning;

l.  The failure to properly evaluate employee qualifications and performance during hiring, retention, and assignment of its employees, including the individual defendants; and

m. The failure to properly train, supervise, and discipline employees, including the individual Defendants.

141.   Defendants' conduct caused Richard, without limitation, extreme pain and suffering, loss of life, and enjoyment of life. Defendants' actions also deprived Plaintiffs of the life-long love, companionship, support, society, care, and sustenance of Richard, and will continue to be so deprived for the remainder of their lives.  Defendants' conduct also caused Plaintiffs' extreme emotional and physical distress and humiliation.

142.   As a result of their conduct, Defendants are liable for Richard and Plaintiffs' injuries, either because they were integral participants in the negligence, or because they failed to intervene to prevent these violations.

143.   Plaintiffs SEONG RHA and EUL RHA bring this claim as successors-in-interest to Richard, and seek both survival and wrongful death damages under state law.

## SEVENTH CLAIM FOR RELIEF

### Violation of Bane Act (Cal. Civ. Code § 52.1)

**[Plaintiffs SEONG RHA and EUL RHA in their capacity as successors-in-interest to RICHARD RHA. against Defendants RAMIREZ AND SCHWARTZ, and Orange County]**

144.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

through 143 of this Complaint with the same force and effect as if fully set forth herein.

145.   As alleged herein, Defendants interfered by threats, intimidation, or coercion with Plaintiffs and Richard's rights under state and federal laws and the state and federal constitution, including, without limitation, the right to be free from excessive force, unreasonable search and seizure, false arrest, the right to due process, and the right to bodily integrity, including their rights under Civil Code § 43, Penal Code §§ 149, 240, and 242, and their rights under the Fourth and Fourteenth Amendments to the United States Constitution and their rights under Article 1, Sections 1, 7, and/or 13 of the California Constitution.

146.   Defendants' conduct caused Richard extreme pain and suffering, and loss of life. Defendants' actions also deprived Plaintiffs of the life-long love, companionship, support, society, care and sustenance of their son Richard, and they will continue to be so deprived for the remainder of their lives. Defendants' conduct also caused Plaintiffs extreme emotional and physical distress.

147.   As a result of their conduct, Defendants are liable for Richard and Plaintiffs' injuries, either because they were integral participants in the misconduct, or because they failed to intervene to prevent these violations.

148.   As a direct and legal result of Defendants' acts and omissions, Plaintiffs suffered damages, including, without limitation, loss of earnings and earning capacity, loss of enjoyment of life, pain and suffering, physical injuries and sickness, emotional distress, medical expenses, funeral and burial expenses, attorneys' fees, costs of suit, other pecuniary losses not yet ascertained and the loss of Richard's love, affection, society, and companionship.

149.   Plaintiffs are informed and believe thereon allege that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless and/or were done in willful and conscious disregard of the rights, welfare, and safety

of Plaintiffs, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at trial.

150.   Plaintiffs bring this claim as successors-in-interest to Richard, and seek both survival and wrongful death damages under state law.

## EIGTH CLAIM FOR RELIEF

### Unreasonable Search and Seizure (42 U.S.C. § 1983)

### [Plaintiffs in their individual capacities against all Defendants]

151.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 149 of this Complaint with the same force and effect as if fully set forth herein.

152.   Defendants detained Plaintiffs in violation of their rights to be secure in their persons against unreasonable searches and seizures by confiscating the property on their person, separating and detaining Plaintiffs in different cars, including locked police cars, for unreasonable periods of time, in view of their neighbors, and then refused to allow them to return to their home.

153.   Defendants' conduct caused Plaintiffs physical discomfort, extreme emotional distress, and humiliation.

154.   As a result of their conduct, Defendants are liable for Plaintiffs' injuries, either because they were integral participants in the misconduct, or because they failed to intervene to prevent these violations.

155.   Plaintiffs are informed and believe thereon allege that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless and/or were done in willful and conscious disregard of the rights, welfare, and safety of Plaintiffs, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at trial.

156.   As a direct and legal result of Defendants' acts and omissions,

Plaintiffs suffered damages, including, without limitation, loss of earnings and earning capacity, loss of enjoyment of life, pain and suffering, physical injuries and sickness, emotional distress, medical expenses, attorneys' fees, costs of suit, other pecuniary losses not yet ascertained.

## **NINTH CLAIM FOR RELIEF**

### **False Imprisonment**

**[Plaintiffs in their individual capacities against all Defendants]**

157.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 155 of this Complaint with the same force and effect as if fully set forth herein.

158.   Defendants separated and detained Plaintiffs without their consent in different cars, including locked police cars, for several hours, in view of their neighbors, and refused to allow them to return to their home.

159.   Defendants' conduct caused Plaintiffs physical discomfort, extreme emotional distress, and humiliation.

160.   As a result of their conduct, Defendants are liable for Plaintiffs' injuries, either because they were integral participants in the misconduct, or because they failed to intervene to prevent these violations.

161.   Plaintiffs are informed and believe thereon allege that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless and/or were done in willful and conscious disregard of the rights, welfare, and safety of Plaintiffs, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at trial.

162.   As a direct and legal result of Defendants' acts and omissions, Plaintiffs suffered damages, including, without limitation, loss of earnings and earning capacity, loss of enjoyment of life, pain and suffering, physical injuries and

sickness, emotional distress, medical expenses, attorneys' fees, costs of suit, other pecuniary losses not yet ascertained.

## **TENTH CLAIM FOR RELIEF**

### **Negligent Infliction of Emotional Distress**

### **[Plaintiffs in their individual capacities against all Defendants]**

163.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 161 of this Complaint with the same force and effect as if fully set forth herein.

164.   Defendants owed a duty of care toward Plaintiffs and were required to use reasonable diligence to ensure that Plaintiffs and Richard were not harmed by Defendants' acts or omissions. Defendants actions and omissions were negligent and reckless, including but not limited to:

       a.   The negligent tactics and handling of the situation with Richard;

       b.   The unjustified confiscation of the property on Plaintiffs' persons, including cell phones;

       c.   The unjustified separation and detention of Plaintiffs in cars, including locked police cars, for several hours in full view of neighbors;

       d.   The detention of Plaintiffs in locked police cars with the windows rolled up and the vehicle's air conditioning not engaged;

       e.   The failure to provide information concerning Richard's condition to Plaintiffs during their detention; and

       f.   Once Defendants ended Plaintiffs' detention, the discouragement of Plaintiffs to visit Richard in the hospital.

165.   Defendants' conduct caused Plaintiffs sickness as well as extreme emotional distress and humiliation.

166.   As a result of their conduct, Defendants are liable for Plaintiffs' injuries, either because they were integral participants in the negligence, or because they failed to intervene to prevent these violations.

## **Request for Relief**

WHEREBY Plaintiff Esther Rha requests the following relief as to all Defendants:

1.   For compensatory damages in the amount to be proven at trial;

2.   For punitive damages according to proof each defendant.

3.   For attorney's fees, including litigation expenses;

4.   For costs of suit;

5.   For any additional relief deemed proper by the court.

WHEREBY Plaintiff Seong K. Rha and Eul Y. Rha request entry of judgment in their favor against all Defendants as follows:

1.   For compensatory damages, including both survival damages and wrongful death damages under federal and state law, in the amount to be proven at trial in excess of $1,000,000;

2.    For punitive damages according to proof each defendant;

3.   For interest;

4.   For reasonable attorney's fees and litigation expenses.

5.   For Plaintiffs' costs of suit;

6.   For any additional relief deemed proper by the court.

## JURY TRIAL DEMAND

Plaintiffs hereby respectfully demands a trial by jury trial in this action pursuant to Rule 38 of the Federal Rules of Civil Procedure.

CARTER LAW

DATE: <u>September 30, 2020</u>          By: _____/s/ Corey A. Carter_____
**Corey Carter, Esq.**
**Attorney for Plaintiffs**